IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAMIEN SMITH,

                                                    OPINION AND ORDER

            Plaintiff,

                                                    15-cv-633-bbc

      v.

CANDACE WARNER, ANTHONY HENTZ,
PHIL HOECHST, ANNETTE ZARIPOV-BRAND,
ANGELA STETTER, PAM HAYWARD, JEAN FELBER
and KARL HOFFMAN,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se prisoner Damien Smith is proceeding on a claim that several medical care providers at the New Lisbon Correctional Institution failed to give him appropriate treatment after he broke his hand in May 2014, thus violating his rights under the Eighth Amendment and state negligence law. Now before the court are a motion for summary judgment filed by state defendants Anthony Hentz, Angela Stetter, Jean Felber, Candace Warner, Phillip Hoechst and Karl Hoffmann, dkt. #59, and separate motions for summary judgment filed by the privately-employed defendants Pam Hayward, dkt. #71, and Annette Zaripov-Brand, dkt. #76.

      After defendants filed their motions, plaintiff moved to amend his complaint to abandon his claims against defendants Phillip Hoechst and Jean Felber. Dkt. #81. That motion will be granted. In light of the advanced stage of the case and plaintiff's failure to

1

oppose Hoechst's and Felber's arguments for summary judgment, those defendants will be dismissed with prejudice.

As for defendants' motions for summary judgment, I am granting them in part and denying them in part. The motions will be granted with respect to plaintiff's claims against defendants Warner, Hoffmann and Hayward, as no reasonable jury could conclude that these defendants were deliberately indifferent or negligent in treating plaintiff's hand injury. The motions will also be granted with respect to plaintiff's claim against Hentz relating to the August 2015 visit and his claim against Zaripov-Brand relating to the June 5, 2014 visit. However, I am denying the motions as to Hentz's, Zaripov-Brand's and Stetter's treatment of plaintiff in May 2014, because there are disputed issues of material fact that must be resolved by a jury.

From the parties' summary judgment materials and the record, I find that the following facts are undisputed, unless otherwise noted.

UNDISPUTED FACTS

A. The Parties

Plaintiff Damien Smith is a prisoner incarcerated at the New Lisbon Correctional Institution. Several of the defendants were employed by the Wisconsin Department of Corrections at New Lisbon during the relevant time period: Dr. Karl Hoffman as a physician, Anthony Hentz as a registered nurse, Candace Warner as manager of the health services unit and as a registered nurse and Angela Stetter as a registered nurse. Defendant

Pam Hayward was employed as a nurse practitioner by Maxim Healthcare Services, Inc., and was working at New Lisbon on a "locum tenens assignment," that is, a temporary substitute, at all times relevant to this case. Defendant Annette Zaripov-Brand is a registered nurse who was assigned in 2014 to work at New Lisbon by her employer, Totalmed Staffing, Inc.

### B.  Health Services at New Lisbon Correctional Institution

Nurses in the health services unit are generally the first point of contact for inmates with health concerns at New Lisbon Correctional Institution. They triage patient complaints, that is, they determine the priority of patents by the severity of their condition, handling directly those that do not require attention from a doctor. Nurses may refer to "nursing protocols," which are written guidelines for treatment that are consistent with the guidelines set by the Wisconsin Board of Nursing. If a nurse concludes that a complaint does not require evaluation from a doctor, the nurse may provide education or over-the-counter medications to the patient. However, nurses may not order testing or prescribe controlled medication. For serious complaints, nursing staff insure that patients see an advanced care provider, such as a nurse practitioner or a physician. If there is an emergency or no advanced care provider is on-site or available, nurses may direct patients to be sent to the local hospital.

Only advanced care providers may request outside appointments with a specialist. The advanced care provider must complete a DOC-3001 Off-Site Service Request and Report form, indicating the type of care requested and the potential provider. The request

also can indicate the level of care required by assigning a "class." Class I and Class II are considered emergency and urgent care and neither requires prior authorization. Class III and Class IV are considered non-urgent and elective non-covered services, and both require prior authorization for care. A committee of Department of Correction employees that meets once a month determines whether to approve requests requiring prior authorization. If an offsite appointment is approved, New Lisbon's medical program assistant associate schedules the appointment with the outside provider. Health service unit nurses and advanced care providers do not have authority or control over scheduling offsite appointments.

C. Plaintiff's Injury and Defendants Hentz and Zaripov-Brand's Initial Evaluations

On May 10, 2014, plaintiff fell on his left hand while playing basketball during recreation time. Correctional staff sent plaintiff to the health services unit immediately. It was Saturday and there was no physician on site. After waiting for about two hours, plaintiff saw defendant Nurse Hentz. Plaintiff told Hentz he had broken his hand, pointed out what he and other inmates believed was an obvious displacement of a bone in his hand and asked to see a doctor or be sent to the hospital. (Plaintiff says that Hentz responded by acknowledging the displacement but stating that it appeared "barely" displaced. Hentz denies that plaintiff's hand had any obvious displacement.)

In reviewing plaintiff's injury, defendant Hentz consulted the "musculoskeletal nursing protocol," which provides procedures for evaluating musculoskeletal injuries. Hentz evaluated plaintiff's grasp, noting that plaintiff had a strong grasp with his right hand and

4

a weak grasp with his left hand. Hentz performed a "capillary refill test," noting plaintiff had good sensation and blood flow. (Hentz also noted that plaintiff's left hand had no swelling or obvious deformity and that plaintiff had a full range of motion with his left wrist and all of his fingers. Plaintiff disputes the accuracy of these notes, stating that his hand was red, slightly swollen, obviously deformed and lacked the range of motion of his other hand.) Hentz asked plaintiff to rate his pain on a scale of 1 to 10, with 10 being the worst pain plaintiff had ever experienced. Plaintiff told Hentz the worst pain he had experienced was being shot twice, while his hand felt like it was being stabbed repeatedly with a butcher's knife. Plaintiff thought his hand felt about half as bad as being shot, so he agreed with Hentz's suggestion that his pain was about 5 on a scale of 10.

Defendant Hentz gave plaintiff ibuprofen and told him to ice his hand and submit a health service request if he continued to have problems. Hentz did not provide a splint or any other protection for plaintiff's hand and refused to contact an advance care provider for a consultation or send plaintiff to the hospital. Hentz also did not schedule any follow-up care. (Plaintiff says Hentz told him he would normally send a patient with plaintiff's symptoms to the doctor but that none were available. Hentz denies saying this.)

The next day, May 11, 2014, plaintiff submitted a health service request stating that his hand had worsened. For the next several days, plaintiff was in severe pain and could not use his hand at all. Other inmates had to assist him with his daily activities.

On May 16, 2014, plaintiff was seen by defendant Zaripov-Brand, a registered nurse. By this time, the swelling in plaintiff's hand had increased. Plaintiff told Zaripov-Brand that

his hand was broken and pointed out where he believed the bone was displaced.  He also told her his hand still felt like it was being stabbed with a butcher's knife repeatedly, that he was in severe pain and distress and that ibuprofen and tylenol were not relieving his pain.  He also said that other inmates had to help him with daily activities.  Zaripov-Brand examined plaintiff's hand and noted swelling and musculoskeletal pain with the potential for impaired movement, but no bruising.  She noted his pain was "stabbing" and at a level of 5 on a scale of 10.  (Plaintiff says Zaripov-Brand told him that his hand looked like it might be fractured and that she would refer him to a doctor and order an x-ray.  Zaripov-Brand denies saying this, stating that she did not have authority to order an x-ray and did not think plaintiff needed to be seen by a physician.  It is undisputed that Zaripov-Brand did not order an x-ray or refer plaintiff to a physician.)  Zaripov-Brand gave plaintiff additional ibuprofen and tylenol, told him to keep his hand elevated to reduce swelling and advised him to return to the health services unit if he did not notice improvement. She declined to splint his hand or refer him to the hospital.

On May 22, 2014, plaintiff submitted another health service request.  He stated that at his last appointment he had been told he would be called down to the health services unit the following Monday or Tuesday but had not been called.  He stated he was "still having issues" and asked to receive an x-ray of his hand.

Defendant Stetter wrote to plaintiff on May 23, 2014 that he was scheduled for an x-ray "next week."  (Defendants do not explain why Stetter told plaintiff he was scheduled for an x-ray when neither Hentz nor Zaripov-Brand, nor apparently anyone else, had ordered

an x-ray.)  Stetter did not see plaintiff in response to this health service request.


## D. <u>Diagnosis and Treatment of Plaintiff's Fracture</u>

On May 27, plaintiff was seen in health services again with complaints about his hand.  He was given more ibuprofen and tylenol, despite stating that medication was ineffective.  Health services staff then contacted defendant Hayward, the advanced care provider on staff that day, about plaintiff's continued complaints of pain and swelling in his hand.  That same day, Hayward ordered an x-ray of plaintiff's hand.  The x-ray showed that plaintiff had a proximal third metacarpal acute fracture, minimally displaced.

The next day, May 28, defendant Hayward retrieved plaintiff from a family visit and brought him to the health services unit, believing that plaintiff's medical needs were sufficiently urgent that she did not want to delay his medical care.  Hayward told plaintiff about the x-ray results and the importance of treating his fracture.  In particular, Hayward told plaintiff that callous formation begins quickly when fractures start to heal, so permanent damage can occur if the fracture is not immobilized.  (Plaintiff says Hayward also told him that he was at risk of permanent damage because his fractured hand had not been protected for 18 days.  Hayward denies referring directly to plaintiff's 18-day lack of protection.)  Hayward also told plaintiff that wearing a splint could decrease his pain.

Upon examination, Hayward noted that the swelling had "nearly completely resolved," but that the hand was tender to palpation at the proximal third metacarpal area just above the left wrist.  She also noted that plaintiff's pain increased when he flexed his

fingers and that his fingers had limited strength against resistance.  After her examination, Hayward splinted plaintiff's left hand with a Colles splint and ace wrap.  (A Colles splint is a premolded, padded aluminum splint designed for support and immobilization prior to surgery or casting.)  Hayward believed that a splint was more appropriate than a cast because the splint would accommodate the swelling that remained, while a cast would be too restrictive.  Hayward told plaintiff she would request an orthopedic consultation.  Plaintiff asked if he could go to the hospital directly, but Hayward said she did not have the authority to send him to the hospital but that he would see a doctor soon.  She also declined to prescribe stronger pain medications and instead instructed plaintiff to continue taking Tylenol and Ibuprofen and to keep his splint on.  Hayward believed that because plaintiff's break had been immobilized, his injury was non-urgent and required prior authorization to proceed with the specialist referral.  Hayward referred plaintiff for an orthopedic consultation the next day, May 29, 2014.  After the referral was approved by committee, an appointment was scheduled by the medical program assistant associate for June 13, 2014.

On June 4, 2014, plaintiff sent a health service request asking when he would receive a follow-up x-ray and cast for his fractured hand.  Defendant Warner responded on June 5, 2014.  Because Warner was not up-to-date on plaintiff's current medical care, she responded by scheduling plaintiff to be seen in the health services unit by a nurse.  Warner did not evaluate plaintiff.

On June 5, defendant Zaripov-Brand examined plaintiff in the health services unit.  Plaintiff asked that a cast be placed on his left hand and also requested medication stronger

than Ibuprofen. At this point, plaintiff says, the pain in his hand was so bad that he could not sleep and felt exhausted and helpless. Zaripov-Brand responded that she had no authority to give plaintiff stronger medication or a cast and that he was scheduled to see an orthopedist. Zaripov-Brand cleaned plaintiff's splint and gave him an extra pillow to keep his left hand elevated.

On June 13, 2014, plaintiff was seen and evaluated by an orthopedist, who applied a fiberglass dorsal splint to plaintiff's left hand. (A fiberglass dorsal splint is not a cast but a rigid splint.) The orthopedist also ordered physical therapy and a follow-up with health services at the prison, but did not recommend or prescribe different pain medication.

On June 16, 2014, defendant Hayward saw and evaluated plaintiff. She ordered another x-ray of plaintiff's hand and ordered that he receive physical therapy. The x-ray showed that plaintiff's fracture had "mild to moderate healing" and associated soft tissue swelling. Plaintiff received another x-ray on July 1, 2014, which showed "moderate" healing.

After July 2014, plaintiff did not file any health services requests about his hand for approximately one year. According to plaintiff, he complained about his hand pain at every medical appointment, but stopped submitting health service requests because he was routinely denied effective pain medication.

E. Complaints and Treatment in 2015

On April 17, 2015, plaintiff met with defendant Dr. Hoffmann for the first time in the health services unit. Plaintiff made various complaints about his weight, diet and feet.

(Hoffmann says plaintiff made no comments or complaints about his hand, but plaintiff says he asked Hoffmann whether it was normal for his hand to act "weird" after a fracture.)

Plaintiff saw defendant Hoffmann again on June 2, 2015. (Hoffmann says plaintiff made no complaints about his hand, while plaintiff says he complained about "mild pains" in his hand.)

On August 4, 2015, plaintiff saw defendant Hentz in the health services unit. Plaintiff told Hentz that he had a popping sensation in his left hand and that it "locked up" when held still for periods of time. He also told Hentz he experienced random pain, spasms and cramps for no apparent reason. Hentz examined plaintiff's hand and was able to feel the clicking and popping sensation in the left hand at the third metacarpal. Hentz gave Tylenol to plaintiff and noted that plaintiff was scheduled to see a physician in October. (Plaintiff says that Hentz also apologized for failing to diagnose plaintiff's fracture at his initial examination in May 2014 and stated that the nurses who saw plaintiff subsequently should have provided better treatment. Hentz denies saying this.)

On August 8, 2015, plaintiff saw defendant Hoffmann about foot pain. Hoffmann prescribed Naproxen for plaintiff's foot pain.

On October 15, 2015, plaintiff saw defendant Hoffmann regarding his hand pain, among other things. Plaintiff told Hoffmann that his hand cracked and popped when he made a closed fist; his pain had gotten worse; and he wanted to see a specialist. Hoffmann noted that plaintiff's left hand had no apparent deformity, but that there was popping when he made a fist. Hoffmann also noted that the fifth carpometacarpal joint seemed to present

hypermobility, which is a joint that is more flexible than one with a normal range of motion. Hoffmann declined to send plaintiff to a specialist, but ordered x-rays of the left hand to check on plaintiff's previous fracture and labs to screen for an inflammatory conditions. (Plaintiff says he asked Hoffmann whether the abnormalities and pain in his hand were a sign of permanent damage, and Hoffmann responded, "that just might be the case." Hoffmann denies saying this.)

On October 20, 2015, plaintiff received an x-ray of the left hand. The x-ray showed a healed fracture deformity of the third metacarpal with remodeling, normal metacarpophalangeal articulations, normal phalanges, no finding of demineralization and no soft tissue abnormality. The final conclusion was a healed fracture deformity of the third metacarpal bone. After reviewing the report, defendant Hoffmann determined that there was not much he could do as the bone had healed already. The only way to address the healed deformity would be to surgically break and re-set the bone. Hoffmann concluded that such a procedure would be extreme in light of plaintiff's lack of mobility problems.

Plaintiff continues to experience pain, popping, cracking, spasms and cramps in his previously broken left hand.


OPINION

Plaintiff contends that defendants' failure to treat him properly caused him to endure severe pain and suffer from ongoing deficiencies and permanent deformity in his left hand. Defendants seek judgment in their favor on plaintiff's claims on the ground that the record

does not support an inference of deliberate indifference or negligence. With the exception of defendants Hayward and Zaripov-Brand, who were employed by private companies, defendants also argue that qualified immunity shields them from money damages. After identifying the appropriate legal standards, I will address plaintiff's claims against each defendant below.

## A. Legal Standards

### 1. Eighth Amendment

To prevail on a claim for inadequate medical care under the Eighth Amendment, plaintiff must show that a prison official was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). For purposes of summary judgment, defendants concede that plaintiff's broken hand presented a serious medical need, so I need not address that issue. King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012).

"Deliberate indifference" is more than medical malpractice; the Eighth Amendment does not codify common law torts. King, 680 F.3d at 1019 ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In particular, an inmate's, or even another doctor's, disagreement with a medical judgment, incorrect diagnosis or improper treatment resulting from negligence are insufficient to state an Eighth Amendment claim. Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997). On the other hand, deliberate indifference does not require a showing of purposeful acts. Farmer v. Brennan, 511 U.S. 825, 836 (1994). The point between these two poles lies

where "the official knows of and disregards an excessive risk to inmate health or safety," or where "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] the inference." Id. at 837. See also Petties v. Carter, 836 F.3d 722, 731 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance."). A jury can "infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006). See also Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (citing Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005)).

2. State law negligence

To prevail on a claim for negligence in Wisconsin, a plaintiff must prove that the defendants breached their duty of care and plaintiff suffered injury as a result. Paul v. Skemp, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. See also Gill v. Reed, 381 F.3d 649, 658-59 (7th Cir. 2004). Wisconsin law defines medical negligence as "the failure of a medical professional to 'exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or

similar circumstances.'" <u>Williams v. Thorpe</u>, Case No. 08-cv-577-jps, 2011 WL 4076085, *7 (E.D. Wis. 2011) (citing <u>Sawyer v. Midelfort</u>, 227 Wis. 2d 124, 149, 595 N.W.2d 423 (1999)). To establish a prima facie claim for medical negligence, a plaintiff must show that the provider failed to use the required degree of skill exercised by a reasonable provider, that he was harmed, and that there is a causal connection between the provider's failure and his harm. <u>Id.</u> Expert testimony is required to establish the standard of care, unless "the situation is one in which common knowledge affords a basis for finding negligence." <u>Sheahan v. Suliene</u>, Case No. 12-cv-433-bbc, 2014 WL 1233700, at *9 (W.D. Wis. 2014).

## B. Claims Against Each Defendant

### 1. Anthony Hentz

Plaintiff contends that defendant Hentz was negligent and deliberately indifferent to his serious medical needs on two occasions: on May 10, 2014, the day plaintiff broke his hand, and on August 4, 2015, about a year later. No reasonable jury could find that Hentz was deliberately indifferent during the August 2015 visit, at which plaintiff complained about pain, cramps, spasms and clicking in his left hand. Hentz examined plaintiff's hand, provided him acetaminophen and noted that plaintiff was scheduled to see a doctor in October. Hentz had no authority to prescribe a stronger medication to plaintiff and there is no evidence that plaintiff's hand presented an emergency or urgent condition requiring referral to an advanced care provider right away. Further, when defendant Dr. Hoffmann examined plaintiff subsequently, he did not provide any care different from what Hentz had

already provided.  In short, plaintiff has submitted no evidence that Hentz's failure to do more at the August 2015 appointment amounted to deliberate indifference or even negligence.

It is a closer question with respect to the May 10, 2014 appointment at which defendant Hentz failed to diagnose plaintiff's broken hand or provide any protection or treatment besides ice and Ibuprofen.  Hentz argues that plaintiff's hand showed no obvious signs of being fractured.  In particular, Hentz says that there were no obvious deformities, plaintiff had good blood flow and range of motion, and his reported pain level (5 out of 10) was inconsistent with a fracture.

However, plaintiff argues that his break was obvious, even to a layperson, and that defendant Hentz refused to do anything about it.  Plaintiff says that Hentz's reliance on his reported pain as being 5 out of 10 is misplaced, as he told Hentz he felt as if his hand were being stabbed repeatedly by a butcher's knife.  Plaintiff also says he had a limited range of motion and his hand was red and swollen with an obvious deformity.  He says the bone displacement was so obvious that numerous inmates recognized that his hand was broken. I do not know whether this is true, but for purposes of summary judgment I must accept plaintiff's own description of what his hand looked like and what he told Hentz.  Miller v. Gonzalez, 761 F.3d 822, 827 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").  I also must accept as true Hentz's statement to plaintiff that he would normally refer someone with plaintiff's symptoms to a doctor but that he was

not going to because it was a Saturday and no advanced care providers were present at the institution.

The question under the Eighth Amendment, then, is whether giving only Ibuprofen and ice to a patient presenting the symptoms described by plaintiff constitutes such a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate . . . [that Hentz] did not base the decision on such a judgment." Estate of Cole v. Pardue, 94 F.3d 254, 261-62 (7th Cir. 1996). See also Collingnon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998) (deliberate indifference may be established if "response so inadequate that it demonstrated an absence of professional judgment, that is, that nominally competent professional would not have so responded under the circumstances."). The question under state negligence law is whether Hentz's actions fell below the standard of care for a registered nurse under the circumstances. Sawyer, 227 Wis. 2d at 149. Although defendants argue that plaintiff needs an expert to answer this question, I disagree. Not even defendant Hentz suggests that it would have been appropriate for him to provide only ice and Ibuprofen to a patient presenting the symptoms described by plaintiff. A lay jury could conclude that if a patient's hand is swollen, weak, deformed and in severe pain after a bad fall, ice and Ibuprofen are not going to be sufficient. Additionally, plaintiff says that Hentz himself told him that his hand looked displaced, albeit "barely," and that he would have referred him to a doctor if one had been available. Finally, plaintiff has cited the statements of defendant Hayward, who states that protecting a fractured hand is "important" and failing to treat a factured hand can cause "permanent injury." Hayward

Decl., dkt. #74, at ¶¶ 20, 22.

In sum, a reasonable jury could rely on plaintiff's own description of his injury, his version of his conversation with Hentz and Hayward's statements to conclude that Hentz exhibited deliberate indifference and was negligent by failing to do more for plaintiff, such as by contacting an advanced care provider by telephone, referring plaintiff to the hospital or providing some protection for plaintiff's hand. A reasonable jury could conclude that Hentz's treatment decision was motivated by his desire to choose the easiest treatment available on a weekend, and that plaintiff's injury went undiagnosed and untreated as a result. Gil, 381 F.3d at 661 ("[I]t is enough to show that a defendant actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard to that risk."). See also Williams v. Liefer, 491 F.3d 710, 716 (7th Cir. 2007) ("[A] jury could find that the defendants' delay caused [the inmate] six extra hours of pain and dangerously elevated blood pressure for no good reason.").

I note that it is a different question whether plaintiff will be able to prove at trial that his permanent deformity and ongoing hand problems are attributable to defendant Hentz's actions. It is probable that plaintiff would need a medical expert to testify that an 18-day delay in splinting his hand caused the injuries from which he continues to suffer. However, that is a damages issue that I need not decide to resolve the pending summary judgment motions. At this stage, it is enough to conclude that a reasonable jury could find that Hentz's actions caused an unwarranted delay in tending to plaintiff's broken hand. As the Court of Appeals for the Seventh Circuit has explained, even a brief delay in treatment "may

17

show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain." Lewis v. McLean, 864 F.3d 556, 563 (7th Cir. 2017) (holding that 1.5 hour delay in treatment could be deliberate indifference) (citing Perez v. Fenoglio, 792 F.3d 768, 777–78 (7th Cir. 2015); McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010); Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008); Williams, 491 F.3d at 715–16).

Finally, I am not persuaded by defendant Hentz's argument that he is entitled to qualified immunity. Qualified immunity protects government employees from liability for civil damages for actions taken within the scope of their employment unless their conduct violates "clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See also Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson v. Callahan, 555 U.S. 223, 236 (2009). "In determining whether a constitutional right has been clearly established, it is unnecessary for the particular violation in question to have been previously held unlawful." Lewis, 864 F.3d at 566 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Instead, the question is whether the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. "It has long been clear that deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." Lewis, 864 F.3d at 566. As for whether Hentz's actions in treating plaintiff ran afoul of that clearly established right, plaintiff's version of events suggests Hentz knew plaintiff's injury required treatment more than what he offered but Hentz failed to take additional steps to help plaintiff. Thus, Hentz is not entitled to qualified immunity. For all

of these reasons, I am denying Hentz's motion for summary judgment.


2. <u>Annette Zaripov-Brand</u>

Defendant Zaripov-Brand was the second nurse to treat plaintiff's broken hand. She saw plaintiff on May 16, 2014, in response to his health service request stating that his hand had gotten worse. Plaintiff contends that Zaripov-Brand acted with deliberate indifference and negligence when she refused to order an x-ray, provide stronger pain medication or refer him to a doctor. Although Zaripov-Brand argues that she lacked authority to order an x-ray or prescribe stronger pain medication, there is no dispute that Zaripov-Brand could have sent plaintiff to a prison doctor or the hospital, but declined to do so.

Plaintiff's declaration describing his appointment with defendant Zaripov-Brand and his symptoms at the time are sufficient to create a genuine dispute of material fact with regard to whether Zaripov-Brand acted with deliberate indifference and negligence. According to plaintiff, his bone was obviously displaced, the swelling had increased, he was unable to use his hand and he was in severe pain. Zaripov-Brand purportedly admitted that plaintiff's hand looked as if it could be fractured, but failed to splint his hand or refer him to a doctor. Instead, she told plaintiff to continue taking over-the-counter pain medication and keep his hand elevated. Even without an expert, a reasonable jury could conclude that failing to contact an advanced care provider or provide some protection for plaintiff's hand, despite acknowledging a potential break, amounted to deliberate indifference and negligence. <u>Sanville v. McCaughtry</u>, 266 F.3d 724, 740-41 (7th Cir. 2001) (medical care provider

deliberately indifferent if she is aware of a substantial risk that her actions would result in serious harm). Accordingly, Zaripov-Brand's motion for summary judgment on plaintiff's claim regarding the May 16, 2014 appointment will be denied.

However, plaintiff has not shown a genuine dispute of material fact with respect to his June 5, 2014 appointment with defendant Zaripov-Brand. That appointment occurred after plaintiff's fracture had been diagnosed and defendant Hayward had splinted plaintiff's hand and referred him to an orthopedist. Zaripov-Brand cleaned plaintiff's splint and gave him an extra pillow to keep his hand elevated, but declined to provide additional treatment on the ground that plaintiff was already scheduled to see a specialist and she had no authority to prescribe treatment beyond what he had received already. Plaintiff argues that Zaripov-Brand should have referred him to an advanced care provider, but he had been seen by defendant Hayward the previous week and he does not suggest that his symptoms had changed significantly since that time. In light of these facts, no reasonable jury could conclude that Zaripov-Brand acted with deliberate indifference or negligence in June 2014. Dixon v. Godinez, 114 F.3d 640, 645 (7th Cir.1997) ("[O]fficials do not act with 'deliberate indifference' if they are helpless to correct the protested conditions.").

### 3. Angela Stetter

Plaintiff contends that defendant Stetter acted with deliberate indifference and negligence when she responded to his May 23, 2014 health service request by taking no action beyond stating falsely that he had been scheduled for an x-ray. Stetter responds that

she cannot be liable for deliberate indifference or negligent care because she was not aware that plaintiff was in pain or otherwise needed any treatment at the time. Rather, she was merely responding to his inquiry about receiving an x-ray.

The problem with defendant Stetter's response is that she has failed to explain why she told plaintiff he was scheduled for an x-ray when nothing in the record suggests that he actually was scheduled for one. According to defendant Hayward, she ordered plaintiff's first x-ray on May 27, three days *after* Stetter responded to plaintiff's inquiry. Plaintiff interprets this apparent discrepancy as evidence that Stetter simply lied in response to plaintiff's health service request because she did not want to be bothered with providing care to him. Although Stetter may have a reasonable, non-malicious explanation for her apparently unsupported response to plaintiff's request, she has not provided it. Drawing all inferences in plaintiff's favor, a reasonable jury could conclude that Stetter received plaintiff's inquiry stating that he was still having problems with his hand and asking for an x-ray and that, instead of meeting with him or scheduling an appointment for him with health services, she responded by stating falsely that he was scheduled for an x-ray. A reasonable jury could conclude that such response constituted deliberate indifference and negligence and caused an additional delay in diagnosing and treating plaintiff's broken hand. These disputed issues of fact also make qualified immunity inappropriate.

Finally, I note that defendants argue that Stetter cannot be liable for negligence because plaintiff was required to file a notice of claim under Wis. Stat. § 893.92 but failed to do so. Defendants concede that a notice of claim is not required for state law medical

negligence claims. However, they argue that plaintiff's claim against Stetter is not a *medical* negligence claim because Stetter never actually provided medical care to plaintiff. This argument is not persuasive. The gist of plaintiff's claim is that Stetter *should have* provided medical care when he reported having problems with his wrist and needing an appointment or an x-ray, but she failed to do so. I conclude that such a claim constitutes a medical negligence claim, and is distinguishable from the case cited by defendants: <u>Snyder v. Injured Patients and Families Comp. Fund</u>, 2009 WI App 86, ¶ 8, 320 Wis. 2d 259, 768 N.W.2d 271 (claim against hospital employee who conducted room search and failed to find handgun was not medical malpractice claim). Accordingly, Stetter's motion for summary judgment will be denied.

4. <u>Pam Hayward</u>

Although defendant Hayward was the first medical provider to order an x-ray of plaintiff's hand, provide him a splint and refer him to a specialist, plaintiff contends that Hayward violated the Eighth Amendment and state negligence law by failing to do more. In particular, he contends that Hayward should have provided him a cast, stronger pain medication and a direct referral to the hospital. At most, however, plaintiff's complaints about Hayward's treatment decisions amount to a disagreement with her professional judgment, not evidence of deliberate indifference or negligence.

Plaintiff argues that Hayward should have put his hand in a cast, rather than a splint, but Hayward has explained that she did not think a cast was appropriate treatment in light

of the minor swelling that remained.  As for her decision not to prescribe stronger pain medication, Hayward believed the splint would decrease his discomfort.  In light of her explanation, the court must give deference to Hayward's decision not to prescribe stronger pain medication despite knowing plaintiff's hand was broken.  Arnett v. Webster, 658 F.3d 742, 759 (7th Cir. 2011) (plaintiff must show that no "minimally competent" doctor would have prescribed medication chosen by defendant); Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) ("The administration of pain killers requires medical expertise and judgment.  Using them entails risks that doctors must consider in light of the benefits.").  Hayward also thought because plaintiff's hand now had some protection from a splint, he did not need to be referred directly to the hospital.  Finally, Hayward could not control the scheduling of the orthopedic appointment.  Thus, any delay in scheduling cannot be attributed to deliberate indifference on her part.  In sum, Hayward has provided logical medical explanations for all of her treatment decisions and there is no evidence suggesting that her actions fell below the standard of care for a nurse practitioner under the circumstances.  To the extent plaintiff disagrees, his disagreements are not sufficient to create a genuine factual dispute.  Accordingly, Hayward is entitled to summary judgment.


5.  Candace Warner

Plaintiff contends that defendant Candace Warner, the health services unit manager, violated his Eighth Amendment and state law rights by failing to do more in response to his June 4, 2014 health service request in which he asked when he would receive a cast and a

follow-up x-ray. Warner responded by scheduling plaintiff for an appointment with a nurse, defendant Zaripov-Brand. Plaintiff argues that Warner should have seen him personally, referred him to a doctor, provided him a cast and stronger pain medications or scheduled him for an x-ray.

Defendant Warner's actions do not support a deliberate indifference or negligence claim. Although she could have seen him personally, Warner did not generally treat patients in her position as a health service manager. Warner did not violate the Eighth Amendment or state law by scheduling plaintiff to see another registered nurse. Burks v. Raemisch, 555 F .3d 592, 595 (7th Cir. 2009) (Eighth Amendment does not prohibit an official from delegating tasks); Greeno, 414 F.3d at 656. Further, even if Warner had seen plaintiff personally, she is a registered nurse and did not have authority to provide plaintiff a cast or stronger pain medications. Finally, although Warner could have scheduled plaintiff to see a doctor or nurse practitioner, rather than a registered nurse, plaintiff had already been treated by defendant Hayward and had been referred to an orthopedist. Thus, even if Warner had scheduled plaintiff to see an advanced care provider, it seems unlikely plaintiff would have received treatment different from what defendant Zaripov-Brand provided. Dixon, 114 F.3d at 645 (no deliberate indifference claim against official who could not have corrected plaintiff's complaint); Sawyer, 227 Wis. 2d at 149 (no negligence claim if medical provider fulfilled duty of care). In sum, Warner did not violate plaintiff's constitutional or state law rights by scheduling him to see a nurse. Accordingly, Warner is entitled to summary judgment.

6. <u>Dr. Karl Hoffmann</u>

Plaintiff contends that defendant Dr. Hoffmann violated the Eighth Amendment and state negligence law by failing to provide adequate treatment for his hand following his examination on October 15, 2015. However, no reasonable jury could conclude that Hoffmann was deliberately indifferent or negligent to plaintiff's serious medical needs at the October 15 appointment or the October 20 follow-up appointment. At the first appointment, Hoffmann examined plaintiff's hand and confirmed that it popped when plaintiff made a fist. He also noted that plaintiff complained of pain. Plaintiff suggests that Hoffmann did nothing in response to his complaints, but in fact, Hoffmann ordered an x-ray of plaintiff's hand as well as lab work to screen for inflammatory conditions. After reviewing the results, he concluded that there was a deformity, but that the only way to address it would be to surgically break and reset the bone so it would heal differently. Hoffmann concluded that re-breaking the bone would be an extreme treatment for the minor deformity in plaintiff's hand.

Notably, plaintiff has not suggested that he wants defendant Hoffmann to surgically break his hand. Instead, he contends that Hoffmann should have provided him stronger pain medication in addition to the Ibuprofen and Tylenol that Hoffmann recommended. Again, however, plaintiff has not shown that Hoffmann's decision not to prescribe narcotic pain medication amounted to deliberate indifference. Plaintiff is not entitled to the pain medication of his choice. <u>Arnett</u>, 658 F.3d at 759; <u>Snipes</u>, 95 F.3d at 591; <u>Banks v. Cox</u>, No. 09-cv-9-bbc, 2010 WL 693517, *7 (W.D. Wis. 2010) ("Although plaintiff may believe

that he needed narcotic pain medication, the Constitution does not require prison officials to provide prisoners the medical care they [the prisoners] believe to be appropriate; it requires officials to rely on their medical judgment to provide prisoners with care that is reasonable in light of their knowledge of each prisoner's problems."). This is particularly true here, where plaintiff's injury occurred more than a year ago and Hoffmann had already prescribed Naproxen to plaintiff prior to the October 2014 appointments. Plaintiff admits that he had a prescription for Naproxen, but argues that the drug was for his foot pain, not his hand. But plaintiff does not explain why that matters. For example, plaintiff does not say that he took Naproxen regularly and that it provided no relief for his hand. As Naproxen is used to treat pain, swelling and stiffness, it presumably would benefit his hand as well. Regardless, plaintiff has not shown that Hoffmann was deliberately indifferent to his hand problems. Nor has he shown that Hoffmann failed to use the required degree of skill exercised by an average doctor. Accordingly, Hoffmann is entitled to summary judgment.


ORDER

IT IS ORDERED that

1. Plaintiff Damien Smith's motion to amend his complaint, dkt. #81, is GRANTED. Plaintiff's claims against defendants Phillip Hoechst and Jean Felber are DISMISSED with prejudice.

2. The motion for summary judgment filed by defendants Anthony Hentz, Angela Stetter, Candace Warner and Karl Hoffmann, dkt. #59, is GRANTED IN PART and

DENIED IN PART.  The motion is GRANTED with respect to plaintiff's claims against defendants Warner and Hoffmann, as well as plaintiff's claims against Hentz related to the August 2015 visit.  The motion is DENIED in all other respects.

3.    Defendant Pam Hayward's motion for summary judgment, dkt. #71, is GRANTED.

4.    Defendant Annette Zaripov-Brand's motion for summary judgment, dkt. #76, is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED with respect to claims stemming from the June 5, 2014 visit.  The motion is DENIED in all other respects.

5.    Defendants' motion to stay proceedings, dkt. #110, is DENIED.

Entered this 20th day of September, 2017.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge